### DETERMINED IN THE

# FIRST DEPARTMENT,

#### AT

## GENERAL TERM,

### May, 1885.

## THE PEOPLE OF THE STATE OF NEW YORK EX REL. HARVEY M. MUNSELL *v.* THE COURT OF OYER AND TERMINER,

*Misconduct of a juror — when the court cannot punish it as a criminal contempt — Code of Criminal Procedure, secs. 411, 415 — Penal Code, sec. 73 — Code of Civil Procedure, sec. 8, sub. 3 — meaning of word " mandate."*

Upon the trial of one Short for a criminal assault, the jury rendered a verdict of acquittal, which verdict was inconsistent with the evidence as recapitulated in the charge of the judge presiding at the trial. During the trial one of the jurors, without the permission or suggestion of the court, went, during a recess, to the premises where the assault was alleged to have been committed, for the purpose of examining them and so acquiring information not furnished by the evidence submitted to the jury. The judge had not, upon the adjournment of the court, admonished the jury, as required by section 415 of the Code of Criminal Procedure, that it was their duty not to converse among themselves on any subject connected with the trial, or to form or express any opinion thereon, until the case was finally submitted to them.

*Held,* that although the juror was guilty of a misdemeanor under section 73 of the Penal Code, yet he was not guilty of a criminal contempt for which he could be summarily punished by the court.

That the word " mandate," as used in subdivision 3 of section 8 of the Code of Civil Procedure, authorizing the court to punish for a criminal contempt a person guilty of a willful disobedience to " its lawful mandate," means only a written direction or order. (Per DANIELS, J.)

That it includes a verbal direction or order. (Per DAVIS, P. J.)

278   PEOPLE ex rel. MUNSELL *v.* OYER & TERMINER.

FIRST DEPARTMENT, MAY TERM, 1885.

WRIT OF CERTIORARI to review proceedings of the court by which the relator was directed to be imprisoned for the period of thirty days, and to pay a fine of $250, for a contempt of court.

*Ira Shafer* and *John Vincent,* for the relator.

*Ambrose H. Purdy,* for the respondent.

DANIELS, J. :

The relator was a member of a jury drawn for the trial of an indictment against Richard Short for a criminal assault. The indictment was tried in the Court of Oyer and Terminer during the present month, and the trial resulted in the acquittal of the defendant. As the evidence has been recapitulated in the opinion of the learned judge presiding at the trial, the verdict appears to have been inconsistent with the facts established by it, and that was believed to have been in part brought about by the misconduct of the relator.

During the progress of the trial certain diagrams were used to exhibit the premises where the assault had been committed, and the relator without any liberty or suggestion on the part of the court, repaired to the premises for the purpose of observing them and acquiring information in that manner not supplied by the evidence submitted to the jury. His conduct in this respect was highly reprehensible and deserving of the censure and condemnation pronounced in the opinion of the justice presiding over the court of Oyer and Terminer. It exhibited the mind of the juror not to have been in that impartial condition which was necessary to enable him, in compliance with the oath that had been administered to him, to decide the case according to the evidence, and that his disposition was to secure other and additional information apparently for the purpose of officiously aiding him in the disposition of the case. This was a gross violation of duty upon his part and of the spirit and intent of the oath which he had taken, rendering the verdict of the jury irregular and possibly authorizing the court to set it aside. But this misconduct, reprehensible as it was, did not subject him to punishment for a criminal contempt, and that was the punishment imposed, unless some warrant shall be found in the statutes of the State, subjecting him for it to such punishment. Whether

PEOPLE ex rel. MUNSELL v. OYER & TERMINER. 279

First Department, May Term, 1885.

statutory authority, including the case as it was presented by the proofs before the court, can be found which will authorize the imposition of this punishment, was not considered in the discussion of the case by the learned judge presiding at the trial.

It was rather assumed, as it plausibly might be, that the authority existed because of the misconduct of the juror and the necessity for its correction by summary punishment. It was deemed proper, therefore, to apply it to his case, not only adequately to punish his own misconduct, but to protect the administration of justice from miscarriage by means of similar or other misconduct of jurors in other cases. The punishment pronounced upon the relator was the extreme sentence provided by section 9 of the Code of Civil Procedure, for the punishment of a criminal contempt, and the point to be determined now is whether it was established by the proof produced before the court that this offense had been committed by the juror. It has been urged, that it was so committed, for the reason that he had no right to proceed to view these premises without the liberty of the court, and none to receive any communication or information relative to the matter pending before him, except according to the regular course of proceeding upon the trial. These restraints upon jurors have been provided by section 411 of the Code of Criminal Procedure and section 73 of the Penal Code. But it has not been declared in either section that a violation of the restraints so provided for by a juror should constitute a contempt of the court in which he may at the time be serving. The section first referred to prescribes no punishment whatever for violating its implied prohibition, that the juror shall not view the premises without the direction or assent of the court; and for violating the section secondly referred to, it has been declared that the juror shall be guilty of a misdemeanor, and that is the only consequence declared to result from his irregular and unlawful conduct in the violation of this section. It has also been provided by section 415 of the Code of Criminal Procedure that the jurors shall be admonished at every adjournment not to converse among themselves on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted. But this section has not declared that jurors who may contravene its provisions shall be liable to be punished in proceedings by way of criminal

280   PEOPLE ex rel. MUNSELL v. OYER & TERMINER.

FIRST DEPARTMENT, MAY TERM, 1885.

contempt. The duty imposed by each of these sections is exceedingly important for the preservation of the impartial state of the juror's mind during the progress of a criminal trial, and too much care cannot be taken to ensure the observance of the directions contained in these provisions of the statutes.

But it has been the policy of the legislature of the State for many years to clearly define the cases in which persons may be punished for criminal contempts. In civil cases, where misconduct has been made the subject of punishment by way of contempt, the provisions of the law have not been so explicit, but they have placed the courts at liberty, in cases not expressly provided for, to award such punishment where it has been usually adopted and practiced in a court of record to enforce a civil remedy of a party to an action or special proceeding, and where it may be required to protect the right of a party. (Code Civ. Proc., § 14, sub. 8.) But this extended right of proceeding has been expressly confined to such misconduct as may defeat, impair, impede or prejudice a right or remedy of a party to a civil action or special proceeding, and it excludes cases of misconduct arising in the course of criminal proceedings which are to be punished as criminal contempts. That misconduct has been otherwise provided for by section 8 of the Code of Civil Procedure, and by that it has been declared that "a court of record has power to punish for a criminal contempt a person guilty of either of the following acts, and no others."

This language has been made use of to include the class of cases in which misconduct may be punished as a criminal contempt, and to exclude all other classes of misconduct from the range of such punishment, and such is its effect with the exception of cases afterwards added by the provisions of the Code of Criminal Procedure.

These provisions are contained in sections 243, 350 and 619; but they include no other proceedings or cases than may be made out for the punishment of misconduct of a grand juror, or of a party obtaining an order staying proceedings from one judge, after an application for it has been denied by another, or of a witness for disobeying a subpoena or refusing to be sworn or testify in a criminal case. Neither of these sections includes the case of the relator, or of misconduct of the nature of that charged against him in the course of these proceedings. But the sole and only authority for proceed-

ing against and punishing him criminally for viewing the premises without the leave of the court, is contained, if it exists at all, in subdivision 3, section 8 of the Code of Civil Procedure, already mentioned. This section consists of six subdivisions, but the third is the only one having any possible relation to the misconduct of this juror, and that subjects a person to punishment by the court for a criminal contempt " for willful disobedience to its lawful mandate." This word mandate is of quite recent introduction into the laws of the State, and came into use by the enactment of the Code of Civil Procedure, and a definition of it has been given by subdivision 2 of section 3343. By this definition it has been declared that " the word ' mandate ' includes a writ, process or other written direction issued pursuant to law out of a court, or made pursuant to law, by a court, or a judge, or a person acting as a judicial officer, and commanding a court, board or other body, or an officer or other person named or otherwise designated therein, to do or refrain from doing an act therein specified." By this definition the word includes only such commands or directions as may be made in writing. For the writ or process mentioned in it must necessarily be in writing, and the other directions included are mentioned as written directions. And that this subdivision is to be so understood and construed is manifest from the first paragraph of the section containing it. For by that it has been declared that " in construing this act the following rules must be observed, except where a contrary intent is expressly declared in the provisions to be construed, or plainly apparent from the context thereof."

And one of the rules so referred to, is that which has already been mentioned defining the signification of this word " mandate." No contrary intent within this language concerning the meaning has been declared in any portion of section 8 of the Code of Civil Procedure. Neither is the existence of any such intent apparent from that section, or subdivision 3, or any section preceding or following it, and the result accordingly is that the mandate mentioned in subdivision 3 of section 8, will include no more than a writ or process, or some other direction made in writing, and no such direction was given by the court to the jury requiring them to abstain from, or avoid, viewing these premises, and there accordingly could be no willful disobedience to any lawful mandate of the

court upon this subject by what was done by this juror. There was no such mandate as the subdivision includes, and it is clear accordingly that it could not have been violated by the juror. That the violation of the other sections of the Code of Criminal Procedure, and of the Penal Code which have been mentioned, could not subject the misconduct of the juror to punishment, under subdivision 3 of section 8 of the Code of Civil Procedure, is equally as clear. For that subdivision has not been made, or so defined, as to subject the juror to punishment by proceedings for a criminal contempt, for a failure to comply with or observe the directions contained in these other sections. For neither of these sections is a writ, process or other written direction within the language employed in subdivision 2 of section 3343 of the Code of Civil Procedure. But they stand entirely independent of this subdivision, prescribing the authority to be exercised, the duty to be observed and the legal consequences of a failure to comply with their directions, so far as that was deemed to be necessary by the body enacting the statutes.

But if it should be assumed that a verbal direction not to visit or view the place in which the crime was charged to have been committed, or to avoid receiving information or evidence concerning the case, would bring the misconduct of the juror within subdivision 3 of section 8 of the Code of Civil Procedure, the case against him would still be unsustained, for there was not only no evidence produced upon the application to punish him, of such a verbal direction having been given by the court to the jury, but beyond that it has been stated positively, without any denial of the statement that no direction whatever was given to the jury upon this subject. And without such a direction, either in writing or in words, there certainly could be no mandate for the jurors to disobey. And as there was none, a case of criminal contempt was not made out against this juror under the provisions of the law declaring and defining the power to be exercised by the court over the subject of criminal contempts.

It may well be held that the misconduct of this juror not only deserved condemnation, but beyond that an adequate degree of punishment. But only that punishment could be inflicted upon him which the law may have provided for a case of this description.

PEOPLE ex rel. MUNSELL v. OYER & TERMINER. 283

First Department, May Term, 1885.

Upon the subject of punishment for offenses and punishable misconduct, the statutes of the State have endeavored to define the cases in which it may be imposed, and the course of legal proceedings which shall precede its imposition. The cases of criminal contempts form no exception to this rule, and care has been taken to avoid the exercise of arbitrary authority by defining and declaring, in clear language, the misconduct for which a person may be so punished. And it is only in the cases which have been prescribed by the legislature as proper subjects for such punishment that it can be imposed upon an offender. The case made against this juror was not one of the cases so defined and prescribed, and while his misconduct well deserved adequate punishment, as long as it was not within the provisions of the law declaratory of cases of willful contempt, it could not be made the subject of punishment as it has been under these provisions.

The proceedings taken for the release of the juror by means of the writ of *habeas corpus* do not require special consideration. They have been practically superseded by the more extended range of examination permitted under the authority of the writ of *certiorari*, issued to review the proceedings of the court. The *habeas corpus* may accordingly be dismissed, and as no case was made out against the juror subjecting him to punishment for a criminal contempt, the order or judgment pronounced by the court, adjudging him guilty of such a contempt and directing his punishment for it, should be reversed, and as it is in substance conceded that no stronger case can be proved against him on a further hearing before the court, he should be discharged.

Davis, P. J.:

The restrictive character of section 8 of the Code of Civil Procedure may be such as to require the reversal of the order of the court of Oyer and Terminer in this case, but I am not able to concur with my brother Daniels in the limitation his construction of that section imposes on the power of the courts to punish for criminal contempts.

The third subdivision of section 8 is the one brought into consideration in this proceeding. It is, when read in connection with the first clause of the section, in these words: "A court of record has

power to punish for a criminal contempt a person guilty of either of the following acts and no others. * * * 3. Willful disobedience to its lawful mandate."

The second subdivision of section 3343 of the same Code, declares that "the word mandate includes a writ, process or other written direction issued pursuant to law, out of a court, or made pursuant to law, by a court or a judge, or a person acting as a judicial officer, or other person named or otherwise designated therein, to do or refrain from doing an act therein specified."

It is assumed and argued, that this provision has the effect to so define and limit the words " lawful mandate," as used in the subdivision of section 8 above quoted, that there can be no punishment under it for criminal contempt, except for violation of such written orders or directions as are therein particularly mentioned. I think this is an erroneous construction of the provision. As my brother DANIELS says, the word " mandate " is one newly introduced in this connection by the codifiers and it is frequently used in the Code. It was, therefore, to declare, not what it should signify, but that it should when used in the Code, include certain specified things, some of which it might otherwise be held were not included, that the subdivision of section 3343 was enacted. The provision that these things shall be included in the word are by no means an exclusion of anything else properly within its signification. The things mentioned in subdivision 2 of section 8, had other legal or commonly accepted names, and for that reason might have been held not to be included in the word mandate, and to prevent that result it was enacted that they should be so included. A statute of inclusion in such a case is not one of exclusion. This is amply illustrated by other subdivisions of section 3343. As for instance, subdivision 11 : " The word affidavit includes a verified pleading in an action, or a verified petition or answer in a special proceeding." It will hardly be argued that such pleading, petition or answer are the only affidavits known to the Code. Subdivision 17 : " The word territory, when applied to a portion of the United States without the State, includes the District of Columbia," but it would be absurd to hold that by force of this section there are no territories except the District of Columbia. These are simply illustrations of the intent of the legislature in enacting the numerous

PEOPLE ex rel. MUNSELL v. OYER & TERMINER. 285.

FIRST DEPARTMENT, MAY TERM, 1885.

provisions of inclusion in the section, not to exclude whatever else is properly embraced in a word or phrase. Other subdivisions, which are intended to define or limit the meaning of a word or phrase, are couched in different language, as for instance, in the twenty-fourth subdivision "the word folio signifies one hundred words, counting as a word each figure necessarily employed." We are, therefore, I think, in determining what is meant by the words "lawful mandate" in section 8 of the Code, to look elsewhere as well as to the provision declaring that certain specified writs, processes and orders in writing are included in it. A court of record has power to make lawful mandates which are not included in writs, processes or written orders. In some cases it is expressly enjoined that the courts shall do so. Section 415 of the Code of Criminal Procedure requires that the court shall direct the jury at the time of each adjournment during the trial that it is their duty not to converse among themselves on any subject connected with the trial, or to form or express any opinion thereon until the case is finally submitted to them. I entertain no doubt whatever that such an instruction is a "lawful mandate," to be obeyed as such by each one of the jurors, and that its willful disobedience may be punished as a criminal contempt when properly proven before the court. The word mandate has a well known signification. Webster defines it to be "an official or authoritative command; an order or injunction; a commission or judicial precept; and, by the canon law, a rescript of the Pope issued for certain purposes;" and by Scot's law, "a contract by which one employs another to manage any business for him," which, by Roman law, must have been gratuitous. So there is no difficulty, when we find authority in the law for the making of an order or direction by a court in the progress of a trial, in holding that the making of it, whether in writing or orally, in the presence of and to the person or persons affected by it, is a lawful mandate of the court. A willful disobedience of such a lawful mandate is a criminal act. If committed in the presence of the court it may be summarily punished on the spot. If shown to have been willfully committed elsewhere, it may be punished by the court, after conviction on a proper hearing of the accused, as a willful contempt. There can be, I think, no sound reason to doubt that where a court expressly

286    PEOPLE ex rel. MUNSELL v. OYER & TERMINER.

FIRST DEPARTMENT, MAY TERM, 1885.

directs or commands an officer of the court, or a juror engaged in a trial to refrain from doing any act forbidden by statute or law, and especially where the law condemns the act itself as criminal, the willful doing of the act after such command or direction is the violation of a lawful mandate, which the court may punish as a criminal contempt. As, for instance, where an officer is directed to keep the jury together during recesses or adjournments, and the court, for greater caution adds to the requirements of the law its express command to perform this duty, his willful neglect of that duty in permitting the jury to separate, or others to associate and converse with them, may be punished as a criminal contempt. And so, if a jury about to retire for the consideration of their verdict, is expressly commanded by the court not to introduce or allow intoxicating liquors into their room, and the command is willfully violated by any of their number, whereby any of the jury become unfitted for their duties by intoxication, the court may summarily punish the guilty parties. There is no necessity that mandates of this kind be put in the form of writs or processes, or written orders, and served on the persons affected. Their presence when the order is made, and the hearing of it as a part of the oral proceedings of the court, is abundant notice of a lawful mandate to attach the obligation of obedience and liability for a willful violation. These things are inherent in the very nature and constitution of courts, and may be regarded as injunctions of the law, and there could be no security for the orderly procedure of trials in courts of justice if the power did not exist to enforce them summarily. It is no answer to say that the guilty persons may be indicted for misdemeanor. That is not an effectual remedy, and it is one seldom enforced and little respected. Suppose, in an important trial of an influential and powerful party, the jury, upon an adjournment, shall willfully separate, going whither they choose and refuse to return, and thus break up and defeat the trial, or shall openly, out of court, receive bribes for giving their verdict, is it conceivable that the court is powerless to punish summarily because it has not issued a written command not to do those things, or entered and served an order in writing to that effect. I am not willing to hold that the Code has codified all virtue out of the judicial authority of courts.

In the case of the relator he committed an act declared to be a

misdemeanor under the statute, for which he may be indicted, tried, and if convicted, punished.  His act was one, in the event of the conviction of Short, fatal to justice, for it would require the setting aside of the verdict and a new trial.  It was a willful act, because he intended to do just what he did do.  He was ignorant of the consequences, and probably did not know of the statute which regulates the visiting and inspection of premises where an offense has been committed.

. The only thing, therefore, that stands in the way of his punishment for criminal contempt is the simple fact that his misconduct was forbidden by statute only, and not by a mandate of the court.  If the court had instructed the jury orally or otherwise, that they, or either of them, could not visit the office of O'Donovan, where the crime was charged to have been committed, unless allowed by the court as prescribed by the Code, I have no doubt that the conviction for contempt would be both lawful and just.  The inability to show such a direction seems to be fatal, under the requirements of the third subdivision of the eighth section of the Code.  The relator escapes from punishment for contempt, not because he did not do a wrongful act declared criminal by law, but because the learned and able judge who presided at the trial did not anticipate that any intelligent juror could so far forget or disregard his duty, and so did not in advance command him to the contrary.

